**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alberto Flores,<br><br>             Plaintiff,<br><br>v.<br><br>Phillip Verdugo, et al.,<br><br>             Defendants. | No. CV-06-679-PHX-SMM<br><br>**MEMORANDUM OF DECISION AND ORDER** |

Before the Court is Defendant Phillip Verdugo and Phoenix Union High School District's ("Defendants") Motion for Summary Judgment (Dkt. 59, Defs.' Mot. for Summ. J.). Defendants seek summary judgment on Plaintiff Alberto Flores's ("Plaintiff") case in its entirety, asserting that Plaintiff has failed to produce sufficient evidence to create any genuine issues of material fact, and judgment should be entered in favor of Defendants as a matter of law. (Id. at 1.) Plaintiff opposes the Motion. (Dkt. 65, Pl.'s Resp.) This matter being fully briefed and ripe for decision (see Dkt. 67, Defs.' Reply), the Court now issues this Memorandum of Decision and Order.

## BACKGROUND

Plaintiff is a naturalized American citizen born in Mexico. (Dkt. 60, Defs.' Statement of Facts ("DSOF") ¶ 1.) Plaintiff has been employed by Defendant Phoenix Union High School District ("the District") as an assistant principal at all times relevant

1  to this case. (Id. at ¶ 2.) Plaintiff was hired by the District in July of 2000. (Id. at ¶ 3.)
2  From July 2000 to June 2007 Plaintiff was employed as an assistant principal at Maryvale
3  High School. (Id. at ¶ 4.) In July 2007, the District transferred Plaintiff to an assistant
4  principal position at Carl Hayden High School, where he currently remains assigned. (Id.
5  at ¶ 5.)
6     In 2003, Defendant Phillip Verdugo replaced Barbara Dobbs as principal of
7  Maryvale High School. (Id. at ¶ 6.) Conflicts between Verdugo and Plaintiff first arose
8  in September 2003, when Verdugo directed Plaintiff to stop playing basketball with
9  students during the lunch hour. (Id. at ¶ 7.) Beginning in November 2004, Plaintiff
10 drafted several letters to Verdugo and other District administrators stating Plaintiff's
11 concerns regarding the circumstances of his employment and relationship with Verdugo
12 and requesting a transfer. (See DSOF, Ex. 9, Letters dated Nov. 8, 2004, Nov. 10, 2004,
13 Apr. 2005, June 3, 2005.) None of these letters indicated that Plaintiff's national origin
14 caused or contributed to the difficulties between Plaintiff and Verdugo. (See id.) A
15 performance evaluation completed June 1, 2004 by Verdugo rated Plaintiff as "Meets
16 Expectations" in all ten performance areas.[1] (DSOF, Ex. 8.) A similar evaluation
17 completed June 1, 2005 lowered the rating to "Needs Improvement" in five of the ten
18 areas. (Id.)
19    On March 9, 2005, Plaintiff was issued a written reprimand for violating the
20 District's evaluation procedures. (DSOF ¶ 11.) Plaintiff had evaluated two teachers and
21 his evaluations of them were identical except for the name of the teachers. (DSOF, Ex.
22 10.) Plaintiff grieved the reprimand to Nora Gutierrez, Assistant Superintendent of
23 Human Resources for the District, on the grounds that he felt it was too severe, and that
24 the District's guidelines regarding progressive discipline were not followed. (DSOF, Ex.
25 11.) In July 2005, Plaintiff lodged a complaint of harassment against Verdugo, requested

---

[1] The performance evaluation form provided four categories of performance—Inadequate Performance, Not Applicable, Needs Improvement, and Meets Expectations—with Meets Expectations being the highest category. (DSOF, Ex. 8.)

- 2 -

1   a transfer to another school, and requested that the two evaluations by Verdugo and the
2   written reprimand be removed from Plaintiff's file.  (DSOF, Exs. 13, 14.)  Legal counsel
3   for the District completed an investigation of the complaint filed against Verdugo, and did
4   not believe that the complaint rose to the level of harassment.  (DSOF, Ex. 16.)

5   In August 2005, Plaintiff hired an outside company to call Verdugo and Gutierrez
6   to check his references.  (DSOF ¶ 16.)  Verdugo rated Flores as satisfactory in all areas,
7   and his tone of voice "did not lead [the company] to believe there was a problem."
8   (DSOF, Ex. 15.)  On September 23, 2005, Plaintiff submitted a letter of complaint to
9   Assistant Superintendent Arthur Lebowitz entitled "Claim of National Origin
10  Discrimination and Request for Equitable Remedies."  (DSOF ¶ 18.)  Plaintiff mentioned
11  in that letter a conversation that Verdugo allegedly had with another District employee
12  where Verdugo allegedly said that Plaintiff "knew nothing about his Hispanic
13  background, that he has been fed with a silver spoon and he acted like he was white."
14  (DSOF, Ex. 7.)  Verdugo has at all times denied having made that comment.  (DSOF ¶
15  20.)

16  Plaintiff continued writing letters to District administrators, raising his concerns
17  with his work environment and relationship with Verdugo.  (DSOF Ex. 17.)  In
18  November 2005, Plaintiff filed a Charge of Discrimination with the Equal Employment
19  Opportunity Commission ("EEOC"), alleging that Verdugo had created a hostile work
20  environment and had discriminated against Plaintiff based on Plaintiff's national origin.
21  (DSOF ¶ 23.)  In March 2006, Plaintiff filed the Complaint in this case.  (Dkt. 1, Compl.)
22  In December 2006, Plaintiff filed a Charge of Retaliation with the EEOC.  (DSOF ¶ 25.)
23  On January 9, 2007, Plaintiff was evaluated by Dr. Laura Sherman and began treatment
24  for post-traumatic stress disorder ("PTSD").  (Dkt. 66, Pl.'s Statement of Facts ("PSOF")
25  ¶ 19.)  In Dr. Sherman's opinion, Verdugo's conduct toward Plaintiff was sufficient to
26  cause Plaintiff's PTSD.  (PSOF ¶ 26.)
27  //
28

## STANDARD OF REVIEW

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also Jesinger, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Id.; see Jesinger, 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. See Celotex, 477 U.S. at 323-24. The party opposing summary judgment need not produce evidence "in a form that would be admissible at trial in order to avoid summary judgment." Id. at 324. However, the nonmovant "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Matsushita Elec. Indus. Co., Ltd. v.Zenith Radio Corp., 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).

//

//

## DISCUSSION

Plaintiff's Complaint alleges six claims for relief: national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") (Compl. ¶¶ 24-27); retaliation in violation of Title VII (Compl. ¶¶ 28-31); national origin discrimination in violation of the Arizona Civil Rights Act ("ACRA") (Compl. ¶¶ 32-35); retaliation in violation of the ACRA (Compl. ¶¶ 36-39); a claim under 42 U.S.C. § 1983 ("§ 1983") against the District (Compl. ¶¶ 40-42); and a claim under § 1983 against Verdugo (Compl. ¶¶ 43-46).

Plaintiff characterizes for the first time in his Response to Defendants' Motion for Summary Judgment that his discrimination claims under Title VII and the ACRA are claims for hostile work environment. (See Pl.'s Resp. at 3-7.) The Complaint does not itself clearly identify the nature of the discrimination claims, as they are captioned "Race/National Origin" and allege "discrimination and retaliation" and a "discriminatory and hostile work environment." (Compl. ¶¶ 25-26, ¶¶ 33-34.) In the parties' joint Proposed Case Management Plan, Plaintiff represents these claims as claims for discrimination, and not hostile work environment. (See Dkt. 12 at 4-7.) Defendants therefore treated them as claims for national origin discrimination. (Def.'s Mot. for Summ. J. 8-12.) After Plaintiff's Response indicated that he was asserting a claim for hostile work environment, Defendants set forth arguments why a hostile work environment claim fails. (Dkt. 67, Def.'s Reply 4-7.) The Court will therefore analyze the discrimination claims as claims for hostile work environment, as Defendants do not object to the apparent revision of the nature of the claim.

As the ACRA is modeled after federal employment discrimination laws, federal cases interpreting and applying Title VII are instructive with regard to the ACRA. Timmons v. City of Tucson, 830 P.2d 871, 875 (Ariz. Ct. App. 1991). Plaintiff's causes of action under Title VII and the ACRA will therefore be subjected to the same legal analysis. For reasons set forth below, the Court finds that no genuine issue of material fact exists as to either of Plaintiff's discrimination/hostile work environment claims and

1  will grant summary judgment as to those claims.  This finding also disposes of Plaintiff's
2  § 1983 claims.  The Court further finds that Plaintiff fails to provide admissible evidence
3  regarding his retaliation claims, and summary judgment is therefore appropriate as to
4  those claims.

5  **A.  Hostile Work Environment**

6  Title VII guarantees employees "the right to work in an environment free from
7  discriminatory intimidation, ridicule, and insult." Meritor Sav. Bank, FSB v. Vinson, 477
8  U.S. 57, 65 (1986).  To make out a hostile work environment claim, a plaintiff must show
9  (1) that he was subjected to verbal or physical conduct based on his race or national
10 origin; (2) that the conduct was unwelcome; and (3) that the conduct was "sufficiently
11 severe or pervasive to alter the conditions of employment and create an abusive work
12 environment." Vasquez v. County of Los Angeles, 349 F.3d 634, 642 (9th Cir. 2003).
13 To survive summary judgment on a hostile work environment claim, a plaintiff must
14 show a genuine factual dispute as to: (1) whether a reasonable person would find the
15 workplace so objectively and subjectively hostile toward him as to create an abusive
16 working environment; and (2) whether the defendant failed to take adequate remedial and
17 disciplinary action.  See McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1112 (9th Cir.
18 2004).  The conduct must constitute discrimination because of an impermissible
19 consideration made illegal by Title VII. Oncale v. Sundowner Offshore Servs., Inc., 523
20 U.S. 75, 81 (1998).

21 A plaintiff must show that the work environment was both subjectively and
22 objectively hostile. See McGinest, 360 F.3d at 1113.  In making the objective
23 determination, courts look to all of the circumstances, including the frequency, severity,
24 and nature (i.e., physically threatening or humiliating as opposed to merely verbally
25 offensive) of the conduct. See Vasquez, 349 F.3d at 642.  The required severity of the
26 conduct varies inversely with its pervasiveness and frequency. McGinest, 360 F.3d at
27 1113.  Finally, the objective hostility of the environment must be considered "from the
28 perspective of a reasonable person belonging to the racial or ethnic group of the plaintiff."

1  Id. at 1115. "[S]imple teasing, offhand comments, and isolated incidents (unless
2  extremely serious)" do not constitute a hostile or abusive work environment. Faragher v.
3  City of Boca Raton, 524 U.S. 775, 788 (1998) (internal quotation marks and citation
4  omitted). A working environment is abusive if "hostile conduct pollutes the victim's
5  workplace, making it more difficult for [him] to do [his] job, to take pride in [his] work,
6  and to desire to stay on in [his] position." Steiner v. Showboat Operating Co., 25 F.3d
7  1459, 1463 (9th Cir. 1994).
8       Defendants seek summary judgment as to Plaintiff's hostile work environment
9  claims on the grounds that, although Plaintiff's conflicts with Verdugo may have
10  contributed to an environment that was contentious and uncomfortable, those conflicts are
11  not actionable under Title VII. (Def.'s Mot. for Summ. J. 8.) Plaintiff contends that
12  Defendants are "in considerable denial" regarding Verdugo's conduct, conduct that
13  Plaintiff asserts met the legal standard for a hostile work environment. (Pl.'s Resp. 4-5.)
14  In reply, Defendants maintain that Plaintiff has not established that his national origin had
15  any impact on how he was treated. (Defs.' Reply 4-7.)
16       The only evidence that Verdugo's treatment of Plaintiff stemmed from Plaintiff's
17  national origin is Verdugo's alleged statement that Plaintiff "knew nothing about his
18  Hispanic background, that he has been fed with a silver spoon and he acted like he was
19  white." (Pl.'s Resp. 5-6; DSOF, Ex. 7.) Although Verdugo has denied making that
20  statement (DSOF ¶ 20), Plaintiff disputes the denial through the sworn statement of
21  Patricia Valle (PSOF, Ex. 6.) Ms. Valle's statement is admissible non-hearsay, as it is
22  offered against a party and is that party's own statement. Fed. R. Evid. 801(d)(2)(A).
23  Verdugo's statements, in turn, are admissible non-hearsay because they are not offered to
24  prove the truth of the matter asserted. Fed. R. Evid. 801(c); Haddad v. Lockheed Calif.
25  Corp., 720 F.2d 1454, 1456 (9th Cir. 1983) (complaints by fellow employees about
26  plaintiff not hearsay because offered to show complaints were received and relevant to
27  employer's nondiscriminatory intent, and not to prove the truth of the complaints).
28  Therefore a genuine issue of material fact exists as to whether Verdugo made the

1  statement. However, the Court must further determine whether a genuine issue of
2  material fact exists as to whether Plaintiff's work environment was objectively and
3  subjectively hostile.
4        Plaintiff also contends that more evidence of Verdugo's "discriminatory animus"
5  can be found in the fact that he did not address and correct the use of discriminatory
6  language by a central office staff person, Joann Carrillo. (Pl.'s Resp. 6.) Plaintiff asserts
7  that Carrillo referred to Mexican parents and students as "mojados," or "wet-backs."
8  (PSOF, Ex. 3, Decl. of Alberto Flores ¶¶ 14-23.) Plaintiff contends that Carrillo
9  continued to use discriminatory language even after Plaintiff and others brought Carrillo's
10 statements to Verdugo's attention. (Id.) Like Verdugo's statements, Carrillo's statements
11 are admissible non-hearsay, as they offered to prove the existence of a hostile work
12 environment, not to prove the truth of the matters asserted. Fed. R. Evid. 801(c); Haddad,
13 720 F.2d at 1456.
14       National origin hostility must be so severe and pervasive as to affect Plaintiff's
15 working conditions. McGinest, 360 F.3d at 1112-13. In this case, the alleged statements
16 by Verdugo and Carrillo do not raise a genuine issue of material fact as to whether
17 Plaintiff's work environment rose to the requisite level of hostility. Verdugo's alleged
18 statement that Plaintiff "knew nothing about his Hispanic background, that he has been
19 fed with a silver spoon and he acted like he was white" is the only purported statement
20 made by Verdugo that would constitute discriminatory animus against Plaintiff's national
21 origin. Plaintiff asserts in a conclusory fashion that Carrillo "continued to use" offensive
22 language after it was brought to Verdugo's attention, but fails to specify the time or
23 frequency of these statements, or whether and how Plaintiff had personal knowledge of
24 such continued use. That Verdugo's alleged statement was made outside of Plaintiff's
25 presence is not necessarily fatal to Plaintiff's claim, as a Title VII plaintiff need not
26 always be directly and personally subjected to the hostile statements. See Woods v.
27 Graphic Commc'ns, 925 F.2d 1195, 1202 (9th Cir. 1991). However, indirect hostility
28

1  only establishes a violation of Title VII if hostility "pervades [the] workplace." Id.;
2  McGinest, 360 F.3d at 1117.

3  Considering the facts in the light most favorable to Plaintiff, the incidents
4  described are insufficient to survive a motion for summary judgment.  In evaluating the
5  objective hostility of a work environment, the factors to be considered include the
6  frequency of the discriminatory conduct; its severity; whether it is physically threatening
7  or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with
8  an employee's work performance.  McGinest, 360 F.3d at 1113.  As to frequency,
9  Plaintiff's evidence indicates that Verdugo allegedly made a single statement concerning
10 Plaintiff's race and national origin; "[s]imply causing an employee offense based on an
11 isolated comment is not sufficient to create actionable harassment under Title VII." Id.
12 (citing Harris v. Forklift Sys. Inc., 510 U.S. 17, 21 (1993)).  Carrillo made at least one
13 statement, but Plaintiff asserts she "continued to use" offensive language without
14 specifying the number of times she made such statements.  None of the statements can be
15 characterized as physically threatening or humiliating, and are mere "offensive
16 utterances" rather than severe discriminatory conduct.  The Court notes in this regard that
17 Carrillo is not alleged to have held any type of supervisory position in relation to Plaintiff.
18 Finally, Plaintiff does not contend that Verdugo's or Carrillo's statements unreasonably
19 interfered with his work performance.

20 Although Plaintiff contends that Flores was subjected to abusive treatment by
21 Verdugo (e.g., Pl.'s Resp. 5:21-22), he does not provide evidence that such abusive
22 treatment was on account of Plaintiff's national origin.  Conduct must constitute
23 discrimination because of an impermissible consideration made illegal by Title VII.
24 Oncale, 523 U.S. at 81.  Similarly, Plaintiff's allegations that Verdugo made racist and
25 sexist comments about other employees do not support his claim for national origin
26 discrimination, and Plaintiff is not bringing claims for race or gender discrimination.
27 (Pl.'s Resp. 6:8-12.)  Plaintiff therefore fails to show the existence of a genuine factual
28 dispute as to whether a reasonable Mexican-born Hispanic would find the workplace so

objectively hostile as to create an abusive working environment, and summary judgment in favor of Defendants will be granted as to his Title VII and ACRA hostile working environment claims.

### B.     Retaliation

Defendants also seek summary judgment on Plaintiff's claims for retaliation brought under Title VII and the ACRA. The Court will first address what appears to be a lack jurisdiction over these claims because no right to sue letter appears in the record as to these claims. As the jurisdictional issue was not raised by the parties and is the subject of some confusion within the Ninth Circuit, the Court will address the merits of Plaintiff's retaliation claims.

####       1.     Jurisdiction

"Nothing is to be more jealously guarded by a court than its jurisdiction. Jurisdiction is what its power rests upon. . . . [I]t is imperative that any attempt to impose upon federal jurisdiction by pleadings without legal justification must be vigorously discouraged." In re Mooney, 841 F.2d 1003, 1006 (9th Cir. 1998), overruled on other grounds by Partington v. Gedan, 923 F.2d 686 (9th Cir. 1991). "To permit a federal trial court to enter a judgment in a case . . . where the federal court could not have original jurisdiction of the suit even in the posture it had at the time of judgment, would by the act of the parties work a wrongful extension of federal jurisdiction and give district courts power the Congress had denied them." American Fire & Cas. Co. v. Finn, 341 U.S. 6, 17-18 (1951).

As jurisdictional prerequisites to bringing a civil action under Title VII, a plaintiff must file timely charges of employment discrimination with the EEOC and receive and act upon the EEOC's statutory notice of right to sue. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798 (1973). Thus, receipt of a right to sue letter is a prerequisite to maintenance of a private civil suit under Title VII. Alexander v. Gardner-Denver Co., 415 U.S. 36, 47 (1974). The precise meaning and significance of this jurisdictional requirement is not entirely clear, as the Supreme Court held that the failure to file a timely

1   EEOC charge is not a jurisdictional prerequisite to a Title VII claim, but rather a statutory
2   requirement subject to waiver, estoppel, and equitable tolling. Zipes v. Trans World
3   Airlines, Inc., 455 U.S. 385, 383 (1982). Following Zipes, Ninth Circuit cases have held
4   that the administrative exhaustion requirement in Title VII cases is "not jurisdictional but
5   merely a condition precedent to suit which a defendant may waive or be estopped from
6   asserting." Stache v. Int'l Union of Bricklayers, 852 F.2d 1231, 1233 (9th Cir. 1988).
7   Other Ninth Circuit cases, in contrast, hold that presentment of discrimination claims to
8   an appropriate administrative agency is a jurisdictional requirement. Serpe v. Four-Phase
9   Systems, Inc., 718 F.2d 935, 936 (9th Cir. 1983) ("In a Title VII action, the subject matter
10  of the court's jurisdiction extends only to those claims made before the EEOC.").
11          This confusion led another Ninth Circuit panel to opine that the plaintiff's "failure
12  to comply with the statutory prerequisites may or may not affect jurisdiction under Title
13  VII" before concluding that the jurisdictional issue need not be reached. Learned v. City
14  of Bellevue, 860 F.2d 928, 931 (9th Cir. 1988)(emphasis added). A district court has
15  reconciled these holdings by dividing the exhaustion requirement into two elements: (1)
16  the jurisdictional non-waivable requirement of presentment of the claim (presentment);
17  and (2) the waivable requirement of exhaustion of administrative remedies (exhaustion).
18  Macy v. Dalton, 853 F. Supp. 350, 356 (E.D. Cal. 1994). In the Title VII context, the
19  jurisdictional presentment requirement is met when the plaintiff presents her claims to the
20  EEOC, even if the claims are not timely presented. Id. (citing Stache, 852 F.2d at 1232-
21  33; Boyd v. United States Postal Serv., 752 F.2d 410, 412, 414 (9th Cir. 1985)). In cases
22  where the plaintiff has never presented a discrimination complaint to the appropriate
23  administrative authority, the district court does not have subject matter jurisdiction.
24  Sommatino v. United States, 255 F.3d 704, 708-09 (9th Cir. 2001).
25          The record in this case indicates that, with respect to the retaliation claims under
26  Title VII and the ACRA, Plaintiff did not satisfy the jurisdictional presentment
27  requirement prior to commencing this action in district court. The Complaint alleges that
28  jurisdiction is appropriate because Plaintiff filed claims with the EEOC and the Arizona

1  Civil Rights Division ("ACRD"), and received right to sue letters from both. (Compl. ¶¶
2  10-11.) However, the charges and right to sue letters attached to the Complaint refer only
3  to Plaintiff's claim for national origin discrimination, agency claim number 350-2006-
4  00629. (Id., Exs. 1-3.) As revealed by the parties' statements of facts, Plaintiff filed the
5  Complaint on March 3, 2006, and did not file a charge of discrimination with the EEOC
6  until nine months later, on December 26, 2006. (DSOF ¶ 25; PSOF ¶ 25.) It therefore
7  appears that the Court lacks jurisdiction over the retaliation claims, as Plaintiff did not
8  satisfy the jurisdictional presentment requirement prior to initiating action in district
9  court. The Court will not decide the jurisdictional issue, however, because this situation
10 could be considered a timeliness issue that Defendants could waive or be estopped from
11 asserting, and Defendants have not raised this issue. See Forester v. Chertoff, 500 F.3d
12 920, 929 (9th Cir. 2007) (holding that district court had jurisdiction to grant equitable
13 relief from plaintiffs' premature filing under the ADEA). Moreover, Defendants are
14 entitled to summary judgment on the merits of Plaintiff's retaliation claims because no
15 genuine issue of material fact exists to suggest that Plaintiff suffered retaliation in
16 violation of Title VII. See Learned, 860 F.2d at 931 (declining to resolve jurisdictional
17 argument raised for first time on appeal).

18        **2.**    **Merits**

19     To establish a prima facie case of retaliation under 42 U.S.C. 2000e-3(a), Plaintiff
20 must show (1) involvement in a protected activity, (2) an adverse employment action
21 taken against him, and (3) a causal link between the two. Little v. Windermere
22 Relocation, Inc., 301 F.3d 958, 969 (9th Cir. 2002). Plaintiff asserts that he suffered
23 retaliation because he had filed hostile work environment grievances. Specifically,
24 Plaintiff asserts that his grievances were not processed pursuant to District policy, and he
25 was denied a transfer to another school. (Pl.'s Resp. 8-9.) Defendant contends that
26 Plaintiff fails to make out a prima facie case for retaliation. (Defs.' Mot. 12-15; Defs.'
27 Reply 8-10.)
28

- 12 -

As to the processing of Plaintiff's grievances, Plaintiff asserts that Gutierrez told him that "unless he fired his lawyer and dismissed his civil rights lawsuit, he would not have any resolution of his hostile work environment problems." (Pl.'s Resp. 8:15-17.) By way of evidence, Plaintiff directs the Court's attention to Plaintiff's purported recording of the conversation and subsequent email to Gutierrez. (See PSOF, Ex. 3, Decl. of Alberto Flores, Exs. B, C.) Defendant objects to Plaintiff's Declaration, to which the purported recording is attached, in its entirety on the grounds that it is "replete with hearsay, rumors, conclusory allegations, and subjective beliefs." (Defs.' Reply 2-3.) The Court finds that the exhibits cited by Plaintiff are inadmissible on authentication and hearsay grounds. In order to be considered by the trial court on a motion for summary judgment, documents must be authenticated and attached to an affidavit that meets the requirements of Rule 56(e). Canada v. Blains Helicopters, Inc., 831 F.2d 920, 925 (9th Cir. 1987). The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Fed. R. Evid. 901(a).

Plaintiff fails to authenticate the purported transcript of the conversation as contemplated by Federal Rule of Evidence 901(b)(6), nor is the Court directed to any other evidence sufficient to support a finding that the matter is what Plaintiff claims. (See Pl.'s Resp. 8:18.) Additionally, any statements made by Plaintiff in the course of the conversation are inadmissible hearsay without exception. Fed. R. Evid. 801, 802. Therefore the Court will not consider the purported recording of the conversation between Gutierrez and Plaintiff. The Court also notes that Plaintiff does not cite to any evidence that the District policy regarding investigations of complaints was not followed.

Plaintiff also contends that, after he complained, he was not transferred while others who were not foreign born on the team were. Plaintiff fails to cite any evidence supporting this contention. (See Pl.'s Resp. 9:10-15.) "The district judge is not required to comb the record to find some reason to deny a motion for summary judgment." Forsberg v. Pac. Nw. Bell Tel. Co., 840 F.2d 1409, 1418 (9th Cir. 1988). Nor does

Plaintiff cite any evidence to suggest a causal connection between his protected activity and the District's failure to transfer him. "[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment." Nelson v. Pima Cmty. Coll., 83 F.3d 1075, 1081-82 (9th Cir. 1996). No genuine issue of material fact existing, Defendants' Motion for Summary Judgment will be granted as to Plaintiff's retaliation claims.

### C.  Section 1983

Plaintiff's remaining claims allege violation of § 1983 on the part of the District and Verdugo. Defendants seek summary judgment on the grounds that neither Defendant violated Plaintiff's rights under § 1983, and that § 1983 cannot be used to enforce Title VII rights. (Defs.' Mot. 15-16.) Plaintiff concedes that if he cannot show intentional discrimination by Verdugo he cannot prevail on his § 1983 claims. (Pl.'s Resp. 10:9-12.) "A plaintiff who fails to establish intentional discrimination for purposes of Title VII . . . also fails to establish intentional discrimination for purposes of § 1983." Sischo-Nownejad v. Merced Cmty. Coll. Dist., 934 F.2d 1104, 1112 (9th Cir. 1991), superceded on other grounds by statute as stated in Dominguez-Curry v. Nevada Transp. Dept., 424 F.3d 1027, 1041 (9th Cir. 2005); see also Peters v. Lieuallen, 746 F.2d 1390, 1393 (9th Cir. 1984) ("Since [plaintiff] has failed to demonstrate intentional discrimination on the part of the defendants, his race discrimination claims under 42 U.S.C. §§ 1981 and 1983 must also fail."). As Plaintiff has failed to demonstrate national origin discrimination under Title VII, and as Plaintiff has not indicated that his § 1983 claims allege violation of any other rights, Defendants are entitled to summary judgment on Plaintiff's § 1983 claims.

### CONCLUSION

Plaintiff fails to establish that a reasonable Mexican-born Hispanic would have found the workplace so objectively hostile as to create an abusive working environment, and summary judgment in favor of Defendants will be granted as to his Title VII and ACRA hostile working environment claims. This also disposes of Plaintiff's § 1983

claims. Summary judgment on Plaintiff's retaliation claims is warranted because Plaintiff fails to provide admissible evidence of an adverse employment action or a causal connection between his protected activity and the employment actions taken. Accordingly,

**IT IS HEREBY ORDERED** granting Defendants' Motion for Summary Judgment (Dkt. 59).

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment accordingly and terminate this matter.

DATED this 7th day of August, 2008.

Stephen M. McNamee
United States District Judge